**In re Eric GROSS, Debtor.**

**Joel Stahl, Plaintiff,**

v.

**Eric Gross, Defendant.**

**Bankruptcy No. 101–22106–353.**
**Adversary No. 01–1590–353.**

United States Bankruptcy Court,
E.D. New York.

Feb. 6, 2003.

necessary for completing work assignments. *See Newman & Schwartz v. Asplundh Tree Expert Co.*, 102 F.3d 660, 662–63 (2d Cir. 1996).

Michele Hauser, New York City, By Michele Hauser, for Plaintiff.

Gonshorek & Pludwin, Brooklyn, NY, By Eliot D. Gonshorek, for the Defendant.

## DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT

JEROME FELLER, Bankruptcy Judge.

### INTRODUCTION

Joel Stahl ("Stahl") initiated the above-captioned adversary proceeding seeking a determination that a state court judgment for the tort of malicious prosecution is excepted from discharge pursuant to 11 U.S.C. § 523(a)(6). Stahl and the Debtor, Eric Gross ("Gross"), are long time combatants who have been engaged in lengthy civil and criminal litigation in the New York State courts. At the end of the day, Stahl prevailed in a cause of action for malicious prosecution and obtained a judgment against Gross, predicated on a jury verdict, for compensatory and punitive damages totaling $210,000.00 ("Judgment"). Thereafter, Gross commenced this Chapter 7 case, in the main, to discharge the Judgment.

Before the Court is a motion for summary judgment filed by Stahl. Stahl asserts that the Judgment is nondischargeable because it resulted from willful and malicious injury caused by Gross and that Gross is collaterally estopped from relitigating the issues of willfulness and malice in the bankruptcy forum. Gross opposes the motion. Gross does not dispute the collateral estoppel effect attributable to

the jury's finding of maliciousness. However, he does contend that the jury never considered the issue of willfulness as that term is defined under § 523(a)(6). Accordingly, Gross argues that collateral estoppel is inapplicable and the issue of willfulness must be litigated in the bankruptcy court.

An examination of the jury instructions in the context of the applicable law governing the tort of malicious prosecution clearly demonstrates that the issue of willfulness within the meaning of § 523(a)(6) was actually and necessarily litigated in the earlier malicious prosecution action. Accordingly, collateral estoppel is applicable in the instant bankruptcy nondischargeability action and Stahl's motion for summary judgment is granted.

### BACKGROUND

While the origin and specifics of the conflict between Stahl and Gross does not appear in the record before this Court and remains a mystery, relevant aspects of the state court litigation has been detailed.

Stahl was arrested in September 1995 on a criminal complaint filed by Gross. Gross also commenced a civil lawsuit against Stahl for the acts allegedly committed on September 13 and 14, 1995 that constituted the basis for his criminal complaint. Stahl, in turn, initiated his own civil lawsuit against Gross. Following a March 1996 bench trial, Stahl was convicted for menacing, a Class B misdemeanor, and three noncriminal harassment offenses. In addition to the aforesaid convictions, the criminal court issued an order of protection ("Order of Protection"). The Order of Protection, operative for one year, directed Stahl to stay away from Gross, the home and place of business of Gross, and to refrain from, among other things, harassing and menacing Gross. Ultimately, the menacing conviction of Stahl was overturned on appeal, but the noncriminal convictions were left in tact.

Meanwhile, in or around December 1996, Gross charged Stahl with violating the Order of Protection and Stahl was arrested on felony charges. Gross testified against Stahl before the grand jury[1] and Stahl was indicted. Gross testified that on November 28, 1996, at about 8:30 a.m., Stahl appeared in front of his house, staring at his front door. Gross further testified that on December 25, 1996, at about 8:15 a.m., while he was sitting in his car across the street from his place of business, Stahl again appeared. Gross described the ensuing events as follows:

> Well, Mr. Stahl came—walked up the block and he saw me and he gave me the finger and I gave him the finger back. He started coming at my car screaming and spitting that he was going to kill me. That I wouldn't get away with this. He would kill me first and on the vehicle spit a second time at me through the window which was opened. I realized that I better leave and I put my car in drive and drove away. He was running towards the car about to kick it.

Gross described his feelings at that time as "scared", "agitated", "annoyed" and "upset". As indicated above, Stahl was indicted.

The felony criminal case proceeded to trial and at the end of the prosecution's case, the criminal court judge dismissed the case without even submitting it to the jury. In dismissing the case, the judge observed that the case was the weakest he had ever seen and that it was his belief

1. Relevant portions of the Gross grand jury testimony are set forth in the Statement of Undisputed Material Facts filed by Stahl pursuant to E.D.N.Y. LBR 7056–1, Exh. G. ("Stahl Statement").

that the complaining witness, Eric Gross, was using the Order of Protection as a sword rather then a shield to increase the damages in a pre-existing civil lawsuit.[2]

Following dismissal of the felony criminal case against him, Stahl amended the complaint in his civil lawsuit to add a cause of action for malicious prosecution. The Stahl and Gross civil actions were consolidated for trial. Before trial, Stahl voluntarily discontinued all causes of action against Gross, except the claim for malicious prosecution. The two civil actions were tried together before a jury in January–February 2001. The jury returned a unanimous verdict, finding that Gross did not have probable cause to believe that Stahl violated the Order of Protection and that Gross acted maliciously. The jury awarded Stahl compensatory damages in the amount of $60,000.00 and punitive damages in the amount of $150,000.00. On April 3, 2001, the Judgment was entered against Gross in the amount of $213,500.00, including interest and costs accrued as of that date.

### THE JURY INSTRUCTIONS

The jury was given the following instructions in respect of Stahl's cause of action for malicious prosecution:

> Joel Stahl seeks damages for injury he claims resulted from his prosecution for violating an order of protection. Eric Gross does not deny that he was responsible for the prosecution or contend that he acted in good faith and on reasonable grounds.

> In order to recover, Joel Stahl must establish that at the time the prosecution was initiated, Eric Gross did not have probable cause to believe that Joel Stahl was guilty of violating the order of protection and that in initiating the prosecution, Eric Gross acted maliciously.

> It is not in dispute that the Grand Jury, after investigation, indicted Joel Stahl. Eric Gross had probable cause to believe that Joel Stahl was guilty unless you find that the indictment was based upon evidence given by Eric Gross to the Grand Jury that was false in a material, that is important way.

> If you find that Eric Gross did not falsify such evidence, your finding will be that Eric Gross had probable cause and you will find for Eric Gross.

> If you find it was falsified, your finding will be that Eric Gross did not have probable cause and you may, although you are not required to, infer from that fact Eric Gross acted maliciously.

> If you find Eric Gross did not act maliciously you will find for Eric Gross. If you find that Eric Gross did act maliciously, you will find for Joel Stahl and you will proceed to consider the question of damages as to Mr. Stall's claim.[3]

### DISCUSSION

 The Bankruptcy Code, in 11 U.S.C. § 523, provides exceptions to the discharge of a bankrupt from liability for his debts. Section 523(a)(6) of the Bankruptcy Code provides:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt.

> . . . . .

> (b) for willful and malicious injury by the debtor to another entity or to the property of another entity.

---

**2.** Stahl Statement, Exh. J at 154.

**3.** Affidavit of Michele Hauser, Esq., Exh. F. at 13–14.

The term "willful" in the context of § 523(a)(6) means deliberate or intentional. S.Rep. No. 989, 95th Cong., 2d Sess. 79 (1978), U.S.Code Cong. & Admin.News 1978, 5787, 5864–65; H. Rep. No. 595, 95th Cong., 2d Sess. 365 (1977), U.S.Code Cong. & Admin.News 1978, 5963, 6320–21. The Supreme Court has interpreted "willful" under § 523(a)(6) as requiring "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger,* 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). The "willful" requisite for nondischargeability under § 523(a)(6) incorporates the category of intentional torts as distinguished from negligent or reckless torts. As further pointed out in *Geiger,* intentional torts generally require that the perpetrator intend the consequences of his act not just the act itself. *Id.*

■■■ There is no requirement that a debt previously established in a judicial proceeding to be of the type that is nondischargeable be relitigated in the bankruptcy court. On the contrary, the doctrine of collateral estoppel applies in bankruptcy nondischargeability proceedings. *Grogan v. Garner,* 498 U.S. 279, 285 n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Brown v. Felsen,* 442 U.S. 127, 139 n. 10, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). Collateral estoppel bars relitigation of an issue previously decided, if the party against whom the prior decision is asserted had "a full and fair opportunity to litigate that issue in the earlier case." *Allen v. McCurry,* 449 U.S. 90, 95, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citations omitted). Collateral estoppel treats as final only those issues "actually and necessarily determined" in the prior suit. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979).

Stahl's motion for summary judgment hinges on the preclusive effect of the civil jury verdict obtained in the state court malicious prosecution action against Gross. The fact that Gross had a full and fair opportunity to litigate the matter is not disputed. Moreover, our review of the jury instructions and verdict leave no doubt that the willful nature of Gross's acts was litigated in the malicious prosecution action and necessarily determined by the jury when it ruled in favor of Stahl and awarded him damages, including substantial punitive damages.

Stahl sought damages for injury claimed to have resulted from his criminal prosecution, instigated by Gross for violations of the Order of Protection. Instructions to the jury included the following:

i) Gross does not deny that he was responsible for the prosecution or contend that he acted in good faith and on reasonable grounds;

ii) in order to recover, Stahl must establish that at the time the prosecution was initiated, Gross did not have probable cause to believe Stahl was guilty of violating the Order of Protection and that in initiating the prosecution, Gross acted maliciously;

iii) in order to conclude that Gross lacked probable cause, the jury must find that Gross falsified evidence submitted to the grand jury;

iv) if the jury finds that Gross falsified evidence and that therefore Gross did not have probable cause to believe Stahl was guilty of violating the Order of Protection, the jury may, although it is not required to, infer therefrom that Gross acted maliciously; and

v) should the jury determine that Gross did not have probable cause and acted maliciously, then the jury would proceed to the question of damages.

The evidence upon which the grand jury returned an indictment against Stahl was the testimony of Gross before that body.

The jury found that the evidence, i.e., the testimony, was falsified and accordingly concluded that Gross lacked probable cause to believe that Stahl was guilty of violating the Order of Protection. The jury further concluded that Gross acted maliciously and proceeded to award compensatory damages of $60,000.00 and punitive damages of $150,000.00.

The jury instructions, the jury verdict and the resultant Judgment must be viewed in totality. From that perspective, it is clear that the parties in the malicious prosecution lawsuit litigated an intentional tort that necessarily implicated issues of willfulness identical to those implicated in this § 523(a)(6) nondischargeability proceeding, and that those issues were actually litigated and necessarily determined in the state court proceeding. To relitigate those issues in the bankruptcy court would be duplicative and run afoul of the principles governing collateral estoppel.

### THE POSITION OF ERIC GROSS

Gross vigorously opposes Stahl's motion for summary judgment, contending that collateral estoppel is inapplicable as the issues sought to be precluded in this nondischargeability adversary proceeding are not identical to those involved in the prior malicious prosecution action. Gross argues that the jury which rendered the malicious prosecution verdict was never charged, nor presented with the question of whether his conduct was intentional. According to Gross, the jury verdict could have been premised on information given to the grand jury that Gross reasonably believed to be true, i.e., an unintended falsehood. Furthermore, Gross asserts that nowhere in the charges or questions to the jury, or in the responses by the jury, is the issue as to whether he had a specific intention of causing injury which, according to Gross's reading of the *Geiger*

case, is required for nondischargeability under § 523(a)(6).

In essence, Gross contends that the issue of "willful injury" under § 523(a)(6) was not at stake and thus not decided in the prior state court suit because it was not an element of the malicious prosecution cause of action. These arguments are devoid of merit. They overlook the requisites of malicious prosecution and misconstrue the Supreme Court decision in *Geiger*.

A brief review of the teleology and principles governing the tort of malicious prosecution is necessary and appropriate. While the tort of malicious prosecution protects against the consequences of wrongful prosecution, public policy favors bringing criminals to justice, and that accusers be allowed room for benign misjudgments. Accordingly, a plaintiff who is unjustifiably prosecuted suffers a number of harms that are worthy of redress, but such redress does not come easily. The law places a heavy burden on malicious prosecution plaintiffs requiring that they establish four elements, i) commencement or continuation of a criminal proceeding by the defendant against the plaintiff, ii) termination of the proceeding in favor of the accused, iii) absence of probable cause for the criminal proceeding; and iv) actual malice. *Broughton v. State of New York*, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94, 335 N.E.2d 310 (1975), *cert. denied sub nom. Schanbarger v. Kellogg*, 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975). Since all of these elements are required to establish a claim, there is no such creature as a valid claim for negligent prosecution. 2 DAN B. DOBBS, THE LAW OF TORTS, § 430, at 1215 (West Group, 2001); *Coleman v. Corporate Loss Prevention Assoc., Inc.*, 282 A.D.2d 703, 724 N.Y.S.2d 321 (N.Y.App.Div.2001). Nor can a malicious prosecution action be based upon the com-

munication of an unintended falsehood to a prosecutor. 2 DOBBS, § 431, at 1218.

Probable cause consists of such facts and circumstances as would lead a reasonably prudent person in like circumstance to believe a malicious prosecution plaintiff to have been guilty of perpetrating a crime. *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455, 455 N.E.2d 1248 (1983). Once a suspect has been indicted, however, the law is that the grand jury action creates a presumption of probable cause. *Id.*

Stahl was indicted at the behest of Gross. In light of the indictment, legal assumptions that the grand jury acted judicially and regularly were operative and Gross was the beneficiary of the presumption that he had probable cause to believe Stahl violated the Order of Protection. The presumption of probable cause arising once a suspect is indicted is rebuttable only where the malicious prosecution plaintiff establishes, fraud, perjury, misrepresentation of evidence or falsification of evidence. *Broughton*, 37 N.Y.2d at 456, 373 N.Y.S.2d at 92, 335 N.E.2d 310; *Colon*, 60 N.Y.2d at 83, 468 N.Y.S.2d at 456. In other words, for Stahl to have prevailed in his malicious prosecution action, Gross must have been found to have misled the grand jury by *intentional misconduct in order to*, in effect, forfeit the presumption of probable cause. In fact, the jury found that Gross was chargeable with intentional misconduct in the submission of falsified evidence that misguided the grand jury, and that he did so maliciously. To suggest that the resulting injury to Stahl was not intentional is just not to be believed.

■ In any event, Gross's interpretation of the *Geiger* case, as requiring a specific intent to cause injury for § 523(a)(6) nondischargeability, is incorrect. The Supreme Court, in *Geiger*, did not define the precise state of mind required to satisfy the § 523(a)(6) willfulness imperative. While the Supreme Court in the *Geiger* case precluded negligent or reckless conduct from the compass of § 523(a)(6), it did not require a specific intent to cause injury. An intentional wrongful act that necessarily causes injury meets the willfulness standard under *Geiger*. 4 COLLIER ON BANKRUPTCY ¶ 523.13[1], at 523–92 (Lawrence P. King, et al. eds., 15th ed.2001).

At the very least, the jury in the malicious prosecution action actually and necessarily determined that the intentional misconduct of Gross in submitting falsified evidence to the grand jury unavoidably caused injury to Stahl. Such misconduct falls within the ambit of willfulness as construed by the Supreme Court in *Geiger*.

### CONCLUSION

For all of the foregoing reasons, the doctrine of collateral estoppel is applicable and bars relitigation of the issue of willfulness in the bankruptcy court. Therefore, there exists no genuine issue as to any material fact and Stahl is entitled to judgment as a matter of law. Accordingly Stahl's motion for summary judgment is granted and the Judgment in the amount of $213,500.00 entered on April 3, 2001, including interest and costs accrued as of that date, is nondischargeable under 11 U.S.C. § 523(a)(6).

**IT IS SO ORDERED.**