**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. AZ-15-1397-LJuF |
| ) | |
| EMMA NOEMI HOBBS, ) | Bk. No. 4:13-bk-06690-BMW |
| ) | |
| Debtor. ) | |
| _____ ) | |
| EMMA NOEMI HOBBS, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| STATE OF ARIZONA, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on September 23, 2016
at Phoenix, Arizona

Filed - October 13, 2016

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Brenda Moody Whinery, Bankruptcy Judge, Presiding
_____

Appearances:    Gove L. Allen argued for Appellant Emma Noemi
                Hobbs; Kelly Elaine Gillilan-Gibson and Valerie
                Love Marciano argued for Appellee State of Arizona
                _____

Before: LAFFERTY, JURY, and FARIS, Bankruptcy Judges.

---

     [*]   This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

# I. INTRODUCTION

Debtor objected to the State of Arizona's ("Arizona") amended proof of claim, which was based on a state court judgment ("Judgment") in favor of Arizona that included $70,000 in civil penalties against Debtor and others. Debtor argued that the debt was discharged because Arizona had not filed a timely complaint to determine nondischargeability. The bankruptcy court overruled Debtor's objection, finding that the civil penalty was automatically nondischargeable under § 523(a)(7).[1] Several months later, Debtor moved for reconsideration of the bankruptcy court's order, asserting that the state court had not assessed a penalty against Debtor in her sole and separate capacity, that her state court attorney had been negligent, and that Arizona's attorney had made false representations to the state court. The bankruptcy court denied the motion as baseless.

The pleadings underlying the Judgment suggest that the civil penalties were intended to be assessed only against Debtor's marital community interest. Moreover, in the state court action, Arizona sought a penalty of $10,000 per defendant. Nevertheless, the Judgment contains a finding that Debtor is liable for civil penalties and awards Arizona a total of $70,000 without differentiating among the defendants. For the reasons explained below, the bankruptcy court correctly found that it lacked jurisdiction to look behind or modify the Judgment. Accordingly,

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and "Rule" references are to the Federal Rules of Bankruptcy Procedure. "Civil Rule" references are to the Federal Rules of Civil Procedure.

we AFFIRM.

## II. FACTUAL BACKGROUND

In 2008, Arizona sued Appellant-Debtor Emma Hobbs and others in Pima County Superior Court for injunctive and other relief for violations of Arizona's Consumer Fraud Act ("CFA"). Mrs. Hobbs and her husband were both named as defendants in that lawsuit, individually and as a marital community. On January 27, 2010, the state court granted Arizona's motion for partial summary judgment, finding all defendants liable under the CFA. Thereafter, Arizona moved for partial summary judgment seeking injunctive relief, restitution, civil penalties, and attorneys' fees, which the state court also granted. Both of Arizona's summary judgment motions defined "Defendants" as seven parties, not including Mrs. Hobbs, and stated that Mrs. Hobbs was a defendant for community property purposes. Arizona's second summary judgment motion requested "that each Defendant be assessed one civil penalty of $10,000.00 for a total of $70,000.00." On August 24, 2010, the state court entered the Judgment in favor of Arizona, which included $70,000 in civil penalties under Ariz. Rev. Stat. § 44-1531.[2] Mrs. Hobbs did not move for reconsideration or appeal the Judgment.

Mrs. Hobbs filed an individual chapter 7 petition on April 24, 2013. Arizona filed a timely proof of claim that it

---

[2] That statute provides:

If a court finds that any person has wilfully violated § 44-1522, the attorney general upon petition to the court may recover from the person on behalf of the state a civil penalty of not more than ten thousand dollars per violation.

-3-

later amended, asserting a claim of $635,014.60 based on the Judgment. The claim included the $70,000 in civil penalties awarded to Arizona and designated those penalties as nondischargeable under § 523(a)(7). That section excepts from discharge (subject to exceptions that are not applicable here) a debt for a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [that] is not compensation for actual pecuniary loss[.]" § 523(a)(7).

Mrs. Hobbs objected to Arizona's claim, arguing that the entire claim was dischargeable because Arizona had not filed a timely complaint objecting to dischargeability of the penalty portion. Mrs. Hobbs also asserted that she was not involved in the actions giving rise to the consumer fraud claim and that the Judgment should have been entered against her only to the extent necessary to bind the marital community. Mrs. Hobbs pointed out that she had listed on her bankruptcy schedules a negligence claim against her state court counsel for allowing the Judgment to be entered against her.[3]

At the hearing on the claim objection, the bankruptcy court found that it lacked the ability to set aside the Judgment and that the civil penalties were automatically excepted from discharge under § 523(a)(7). Thereafter, on January 18, 2015, the bankruptcy court entered an order overruling Mrs. Hobbs' objection to Arizona's claim.

Seven months later, on August 22, 2015, Mrs. Hobbs, through

---

[3] Mrs. Hobbs also argued that the claim was unsecured because she owns no property. Arizona conceded that point.

-4-

new counsel, moved for rehearing. Mrs. Hobbs did not contest the bankruptcy court's conclusion that the penalties were nondischargeable under § 523(a)(7). Instead, Mrs. Hobbs again contended that she was not liable for the penalties because she was not personally involved in the conduct giving rise to the consumer fraud claim, and that the attorneys involved in the original hearing on her objection to Arizona's claim were grossly negligent or dishonest in not pointing out to the bankruptcy court that the Judgment was not against Mrs. Hobbs in her "sole and separate property capacity." Mrs. Hobbs also argued that the Judgment was not entitled to preclusive effect.[4]

After a hearing, the bankruptcy court denied Mrs. Hobbs' motion for rehearing, finding that Mrs. Hobbs had not established any grounds for relief under Civil Rule 60(b) (applicable in bankruptcy via Rule 9024). The bankruptcy court determined that Mrs. Hobbs had not shown that the court's initial interpretation of the Judgment was incorrect, and that the Judgment was entitled to be given full faith and credit. Mrs. Hobbs timely appealed.

### III. JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B) and (I). We have jurisdiction under

---

[4] Mrs. Hobbs' counsel uses the terms "collateral estoppel" and "res judicata" in his briefing in the bankruptcy court and before this Panel. We refer to these doctrines as "issue preclusion" and "claim preclusion," respectively, to conform to the Restatement (Second) of Judgments and United States Supreme Court usage. See Migra v. Warren City School Dist. Bd. of Educ., 465 U.S. 75, 77 n.1 (1984); Robi v. Five Platters, Inc., 838 F.2d 318, 321 n.2 (9th Cir. 1988); The Alary Corp. v. Sims (In re Associated Vintage Group, Inc.), 283 B.R. 549, 554-55 (9th Cir. BAP 2002).

28 U.S.C. § 158.

## IV. ISSUE

Did the bankruptcy court abuse its discretion in denying Mrs. Hobbs' motion for rehearing of the order overruling her objection to Arizona's claim?

## V. STANDARD OF REVIEW

We review denials of motions for relief under Civil Rule 60(b) for abuse of discretion. See United States v. Stonehill, 660 F.3d 415, 443 (9th Cir. 2011). Accordingly, we reverse only where the bankruptcy court applied an incorrect legal rule or where its application of the law to the facts was illogical, implausible, or without support in inferences that may be drawn from the record. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253, 1258 (9th Cir. 2010) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

An appeal from an order denying a Civil Rule 60 motion that was filed more than 14 days after the underlying order or judgment raises only the merits of the order denying the motion and does not raise the merits of the underlying judgment or order. See Maraziti v. Thorpe, 52 F.3d 252, 254 (9th Cir. 1995).

## VI. DISCUSSION

**A. Standard on Motion for Rehearing**

Mrs. Hobbs moved for rehearing under § 105(a), Rule 3008, and Civil Rule 60(b)(6).[5] Rule 3008 permits a party in interest

---

[5] Pursuant to § 105(a), the bankruptcy court may reconsider, modify, or vacate its previous orders, but such relief is sought by motion under Rule 9024. Meyer v. Lenox (In re Lenox), 902 F.2d 737, 739-40 (9th Cir. 1990). In other
(continued...)

-6-

to move for reconsideration of an order allowing or disallowing a claim against the estate. Under Civil Rule 60(b), the court may relieve a party from a final judgment, order, or proceeding for any of six enumerated reasons, including the ground invoked by Mrs. Hobbs here: "any other reason that justifies relief." Civil Rule 60(b)(6).[6]

## B. Mrs. Hobbs did not demonstrate that relief was warranted under Civil Rule 60(b)(6).

In ruling on the initial objection, the bankruptcy court concluded that the Judgment was clear on its face in establishing that Mrs. Hobbs was liable for the $70,000 in civil penalties. The Judgment provides, in relevant part:

> By Minute Entry filed January 28, 2010, the Court granted the State's Motion for Partial Summary Judgment as to Liability against Defendants . . . Emma Hobbs . . . . By Minute Entry filed July 16, 2010, the Court granted the State's Motion for Partial Summary Judgment for Injunctive Relief, Restitution, Civil Penalties and Attorney's Fees against Defendants.

> . . . .

> 2. Defendants[] wilfully violated A.R.S. § 44-1552 and are liable for civil penalties pursuant to A.R.S. § 44-1531.

---

[5](...continued)
words, § 105(a) does not provide an independent ground for relief.

[6] The other enumerated grounds for relief under Civil Rule 60(b) are (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; and (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable.

. . . .

    IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Claude Thomas Kennedy, Martina J. Alsemgeest, Donald W. Kennedy, Granite Hobbs, Emma Hobbs, Kennedy Motorhome Services, LLC, Kennedy's Financial Services, LLC, Kenneth W. Griffith and Banker's First of Tucson, LLC be and hereby are permanently enjoined, directly or indirectly, from engaging in any fraudulent, deceptive or illegal acts or practices in violation A.R.S. § 44 1522; and it is further

    ORDERED, ADJUDGED, AND DECREED that Defendants Claude Thomas Kennedy, Martina J. Alsemgeest, Donald W. Kennedy, Granite Hobbs, Emma Hobbs, Kennedy Motorhome Services, LLC, Kennedy's Financial Services, LLC, Kenneth W. Griffith and Banker's First of Tucson, LLC be and hereby are permanently enjoined directly or indirectly from engaging in the advertisement and/or sale of Financial Services to or from Arizona now and in the future; and it is further

    ORDERED, ADJUDGED, AND DECREED that Defendants, joint and severally, pay $494,364.00 in restitution to the Arizona Attorney General's Office pursuant to A.R.S. § 44-1528(2); and it is further

    ORDERED, ADJUDGED, AND DECREED that the Plaintiff be awarded $70,000.00 in civil penalties pursuant to A.R.S. § 44-1531[.]

Judgment, August 24, 2010, Pima County Superior Court Case No. C2007 7274.

    We find no error in the bankruptcy court's interpretation of the Judgment that the civil penalties are against all defendants, including Mrs. Hobbs. The state court determined that "Defendants[] wilfully violated A.R.S. § 44-1552 and are liable for civil penalties pursuant to A.R.S. § 44-1531." Mrs. Hobbs is included as a named defendant in the lawsuit in her individual capacity, and despite the wording of Arizona's summary judgment motions, nothing in the Judgment suggests that Mrs. Hobbs' liability was limited to the marital community.

    On appeal, Mrs. Hobbs contends that (1) the bankruptcy court

-8-

improperly applied the <u>Rooker-Feldman</u> doctrine in concluding that it had no power to look behind the Judgment; (2) the bankruptcy court should have reviewed the record of the Superior Court case to determine whether Mrs. Hobbs was liable for the civil penalties; (3) the requirements for the application of issue preclusion in determining that Mrs. Hobbs was liable were not satisfied; and (4) the bankruptcy court erroneously denied the motion for rehearing because Arizona's claim is based on a "false debt." Because the first issue is dispositive, we need not extensively analyze the remaining issues.

**1. Full Faith and Credit and the <u>Rooker-Feldman</u> doctrine precluded the bankruptcy court from looking behind the Judgment.**

Federal courts are bound by 28 U.S.C. § 1738 to give full faith and credit to state court judgments. <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 322 (9th Cir. 1988).[7]

---

[7] 28 U.S.C. § 1738 provides:

The Acts of the legislature of any State, Territory, or Possession of the United States, or copies thereof, shall be authenticated by affixing the seal of such State, Territory or Possession thereto.

The records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form.

Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United

(continued...)

Additionally, the Rooker-Feldman doctrine bars a lower federal court, including a bankruptcy court, from reviewing a state court's final decision. See Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir. 1986) (citing Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983)).

However, the Rooker-Feldman doctrine

> is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Accordingly, the Rooker-Feldman doctrine does not ordinarily preclude a bankruptcy court from examining the record in a state court case to determine whether issue preclusion applies to establish the elements of a nondischargeability claim. See Lopez v. Emergency Serv. Restoration, Inc. (In re Lopez), 367 B.R. 99, 103 (9th Cir. BAP 2007). This is because dischargeability is ordinarily a separate federal question over which the bankruptcy court has exclusive jurisdiction. Id. (citing Brown v. Felsen, 442 U.S. 127, 138 (1979)). "[A] nondischargeability claim is an

---

<sup>7</sup>(...continued)
States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken.

-10-

independent federal claim as to which the effect of a prior state court judgment is governed by principles of preclusion." Id. (citing Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991); Brown, 442 U.S. at 132).

However, when determining nondischargeability under § 523(a)(7), the bankruptcy court's review is limited to determining the nature of the debt, not the debtor's conduct or the correctness of the judgment. Colorado v. Jensen (In re Jensen), 395 B.R. 472, 488 (Bankr. D. Colo. 2008).

> [A] governmental unit that has obtained a judgment may tender to the bankruptcy court a copy of the judgment and rest its case under § 523(a)(7). The bankruptcy court then has to examine that judgment to determine whether the obligation evidenced in it is in the nature of a "fine, penalty, or forfeiture," whether the debt is payable to and for the benefit of the government, and whether it represents something other than compensation for actual pecuniary losses. Of course, the bankruptcy court is not precluded from examining the true nature of the debt rather than any label that may be attached to it in the judgment. **But nothing in this line of inquiry requires or even allows the bankruptcy court to determine whether the debtor did in fact violate a law, giving rise to the imposition of a fine, penalty or forfeiture. The validity and amount of the debt, including whether the debtor committed a violation of the law, are no longer relevant.**

Id. (citation omitted) (emphasis added).

Because the bankruptcy court looks only to the nature of the obligation represented by the judgment, any attack on the underlying finding of culpability is prohibited by the Rooker-Feldman doctrine. See Arizona v. Ott (In re Ott), 218 B.R. 118, 125 (Bankr. W.D. Wash. 1998).

Here, the bankruptcy court determined that the civil penalties met the criteria for nondischargeability under § 523(a)(7). Mrs. Hobbs does not challenge that determination.

-11-

Instead, she seeks to attack the underlying finding of liability, which is specifically prohibited under Rooker-Feldman.

### 2. The doctrine of issue preclusion did not require the bankruptcy court to review the record in the state court litigation.

Mrs. Hobbs argues that the bankruptcy court incorrectly applied issue preclusion in determining that the civil penalties were nondischargeable. This argument reflects a misunderstanding of the bankruptcy court's ruling and the applicable law.

The bankruptcy court did not apply issue preclusion in determining that the civil penalties were nondischargeable. As explained above, the bankruptcy court was required only to examine the Judgment to determine whether the civil penalties at issue represented a debt for a "fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, [that] is not compensation for actual pecuniary loss[.]" § 523(a)(7). Once the bankruptcy court made that determination, no further analysis was required. See In re Jensen, 395 B.R. at 488.

### 3. Mrs. Hobbs' remaining arguments are foreclosed by the Rooker-Feldman doctrine.

The rest of Mrs. Hobbs' arguments focus on the inconsistencies between Arizona's motions and the Judgment. However, as noted, the bankruptcy court was required to give full faith and credit to the Judgment, which clearly imposes civil penalties against Mrs. Hobbs individually. Any error in the underlying state court findings should have been addressed in a motion for reconsideration or an appeal to the appropriate state tribunal; the bankruptcy court was without jurisdiction to alter the Judgment.

-12-

**C.  The Judgment is not consistent with the evidence presented or arguments made to the state court.**

And one last point.

For the reasons noted above, we have concluded that, under the Rooker-Feldman doctrine, the bankruptcy court's decision was correct.  However, we also note here, as we noted during Arizona's presentation at oral argument of this matter, that the Judgment is not consistent with the evidence or the arguments presented by the Arizona attorney general's office.  We raise the point explicitly, if briefly, in the hope that Arizona's attorneys will move the state court to correct their error.

Arizona filed two motions for summary judgment.  The first sought a determination of liability, and the second sought the imposition of remedies.  Both motions carefully defined the term "Defendant" to mean only seven of the named defendants, not including Mrs. Hobbs.  Both motions stated that Mrs. Hobbs and another defendant were "defendants for community property purposes."  The motions argued, and offered evidence, that the "Defendants" violated the CFA.  Because Mrs. Hobbs was not one of the "Defendants," the motions did not argue or prove that she violated the CFA.  According to the motions, Mrs. Hobbs' only involvement in the scheme is that her husband, who is one of the "Defendants," "acted on behalf of the marital community," that she "received money" from a company that was among the "Defendants," and that "Defendants' marital communities benefitted from Defendants' violation(s) of the CFA."  Neither motion argued that this limited involvement subjected Mrs. Hobbs to personal liability for penalties.

-13-

The second motion makes the situation even more clear:

> [T]he State respectfully requests that each Defendant be assessed one civil penalty of $10,000.00 for a total of $70,000.00.

Arizona again used the defined term "Defendants," which did not include Mrs. Hobbs. Simple arithmetic further confirms that Arizona sought penalties against only the seven "Defendants," not Mrs. Hobbs.

Unfortunately, Arizona's attorneys did not draft the proposed judgment which they presented to the state court with the same care and precision as the motions. The Judgment uses the term "Defendants" but does not include the definition provided in the motions. The Judgment grants $70,000.00 in civil penalties but does not explain that the penalties apply to only seven of the defendants.

Put simply, Arizona's attorneys presented to the state court a judgment which their evidence and arguments do not support.

For the same reasons that compel us to affirm the decision of the bankruptcy court, i.e., the Rooker-Feldman doctrine's prohibition on federal courts acting as courts of appeal from state court judgments, neither this court, nor any other federal court, is empowered now to probe the basis for the obvious defects in the judgment presented to the state court. To be sure, on the spectrum of likely scenarios, we surmise that the disconnect between, on the one hand, the claims stated and the evidence presented by Arizona and, on the other, the form of judgment prepared by Arizona that was ultimately entered by the state court, is more likely the result of inadvertence and error than a blatant attempt to mislead the state court and improperly

-14-

disadvantage a party. Yet, to this debtor, the effect even of such inadvertence is just as ruinous as truly nefarious behavior would have been. And there is no question but that, as officers of the court, attorneys have a duty to correct mistakes such as the ones presented here.

Moreover, the Arizona Supreme Court has recognized that a government lawyer is a "shepherd of justice," "with enormous resources at her disposal," and thus bears a heightened responsibility to act ethically in all respects to avoid undermining the public trust or inflicting severe damage to our system of justice: "[T]his alone compels the responsible and ethical exercise of this power." In re Peasley, 90 P.3d 764, 772-73 (Ariz. 2004) (en banc) (citation omitted); see generally In re City of Newark, 788 A.2d 776, 782 (N.J. Super. 2002) ("Undoubtedly, the need to dispel all appearances of impropriety becomes even more compelling and acute when the attorney is a government lawyer."); State ex rel. Neb. State Bar Ass'n v. Rhodes, 453 N.W.2d 73, 90 (Neb. 1990) ("the conduct of a government attorney is required to be more circumspect than that of a private lawyer because improper conduct on the part of such an attorney reflects upon the entire system of justice in terms of public trust").

This panel is powerless to correct this obvious error. But Arizona's attorneys can (and should) move the state court to correct the Judgment which they should never have presented.

## VII. CONCLUSION

Because the bankruptcy court did not abuse its discretion in denying Mrs. Hobbs relief under Civil Rule 60(b), we AFFIRM.

-15-