

FILED

DEC 21 2018

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC-17-1252-LSTa |
| MICHAEL A. TURCHIN, | Bk. No. 2:16-bk-13147-BR |
| Debtor. | Adv. No. 2:16-ap-01281-BR |
| MICHAEL A. TURCHIN, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| STEVEN BERKOWITZ, | |
| Appellee. | |

Submitted Without Argument on November 29, 2018
at Pasadena, California

Filed – December 21, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Appearances:     Michael F. Chekian of Chekian Law Office, Inc. on brief for Appellant; R. Parker Semler of Semler & Associates, P.C. on brief for Appellee.

Before: LAFFERTY, SPRAKER, and TAYLOR, Bankruptcy Judges.

## INTRODUCTION

The bankruptcy court granted summary judgment to Appellee Steven Berkowitz, finding the debt owed to Mr. Berkowitz by Appellant Michael Turchin nondischargeable under §§ 523(a)(2)(A) and (a)(6).[1] The court granted summary judgment based on the issue preclusive effect of a Colorado state court judgment finding Mr. Turchin liable for fraud.

We AFFIRM the bankruptcy court's order granting summary judgment on the § 523(a)(2)(A) cause of action. Because we are affirming on that claim, we need not address the § 523(a)(6) cause of action.

## FACTUAL BACKGROUND[2]

Mr. Berkowitz and Mr. Turchin were members of 1335 Sage Properties, LLC ("Sage"), along with John Reynolds and Michael

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

[2]The facts regarding the events giving rise to the subject debt are taken from the Colorado state court judgment entered November 5, 2015.

2

MacDermott. Sage was formed to develop real property in Aspen, Colorado. Mr. Turchin, Mr. Reynolds, and Mr. MacDermott (but not Mr. Berkowitz) also had interests in another development project in Aspen called the "Snowbunny Project." Both projects were funded in part by loans from Timberline Bank that were secured by deeds of trust against the subject real properties. Mr. Berkowitz and Mr. Reynolds were guarantors of the loan funding the Sage project. The Snowbunny Project was funded with a construction loan guaranteed by Mr. Reynolds and Mr. MacDermott. The Snowbunny loan agreement provided that if a guarantor of the Snowbunny loan had other obligations to Timberline and defaulted on those obligations, Timberline could stop funding the Snowbunny loan.

The Sage project had financial difficulties that caused Sage to default on its obligations to Timberline. Sage sought and obtained from Timberline an extension to pay but was unable to comply with the terms of the extension. Sage sought another extension. Timberline agreed to a further extension on condition that an additional $250,000 in collateral be pledged.

Mr. Turchin, Mr. MacDermott, and Mr. Reynolds approached Mr. Berkowitz to ask if he would be willing to put up additional collateral. Mr. Berkowitz agreed on condition that the other three members each indemnify him against any losses related to the Sage loan in proportion to their ownership interests in Sage. Although Mr. Turchin disputes that he

agreed to the indemnification, the state court found that he and the other members of Sage orally agreed to indemnify Mr. Berkowitz as proposed. Based on that agreement, Mr. Berkowitz executed a deed of trust on his home as additional collateral for the Sage loan. Timberline granted the extension, but Sage was still unable to pay the loan as agreed. Timberline therefore commenced a civil action in Pitkin County, Colorado, District Court to foreclose the deeds of trust, including the one granted by Mr. Berkowitz. Mr. Berkowitz paid $250,000 to obtain the release of the deed of trust against his home. As a guarantor, Mr. Berkowitz remained liable for any deficiency after foreclosure of Timberline's first deed of trust securing the Sage loan. He therefore signed another promissory note for $650,000 which was secured by a new deed of trust against his home. He also paid $75,000 in interest and $39,322.29 in attorneys' fees.

In the foreclosure action, Mr. Berkowitz cross-claimed against Mr. Turchin for fraud, breach of contract, unjust enrichment, promissory estoppel, common law contribution, and civil conspiracy.[3] After a bench trial, in November 2015, the state court entered a judgment in favor of Mr. Berkowitz and against Mr. Turchin in the amount of $624,822.53 for breach of contract, promissory estoppel, and fraud.

---

[3]Mr. Berkowitz also cross-claimed against Mr. Reynolds and Mr. MacDermott. The MacDermott cross-claim was settled; the state court entered judgment against Mr. Reynolds for breach of contract, promissory estoppel and contribution.

4

With respect to the fraud claim, the state court found:

> Against Turchin only, Berkowitz makes a fraud claim. In light of the additional findings above, the Court finds Turchin promised to indemnify Berkowitz to the extent of Turchin's pro rata interest in Sage calculated without Berkowitz's interest. This promise was material to Berkowitz's agreement and action to encumber his home as additional collateral for the Sage Loan. Turchin knew he did not intend to pay the indemnification he promised, and he knew this at the time he made the promise in the 2008 meeting. Turchin intended that Berkowitz rely on his promise, and Berkowitz reasonably did so to his detriment. His reliance has damaged Berkowitz to the extent of the indemnification losses attributable to Turchin as discussed above.

Mr. Turchin appealed the state court judgment to the Colorado Court of Appeals, which affirmed.

Mr. Turchin filed a chapter 7 petition in March 2016. Mr. Berkowitz filed an adversary proceeding seeking a declaration that the state court judgment was nondischargeable pursuant to §§ 523(a)(2)(A), (a)(4), and/or (a)(6). Mr. Berkowitz then moved for summary judgment on the §§ 523(a)(2)(A) and (a)(6) claims based on the issue preclusive effect of the state court judgment.

The bankruptcy court granted the motion, stating "I am going to grant this motion. . . . I read very carefully what the state court did and just one paragraph, but that paragraph says it all. So I'm going to grant it." The court entered its written order on August 15, 2017; Mr. Turchin timely

appealed.

In response to the Panel's order regarding finality, the parties dismissed the § 523(a)(4) claim.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court err in granting summary judgment in favor of Mr. Berkowitz on his § 523(a)(2)(A) claim based on the issue preclusive effect of the state court judgment?

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion is available. *Lopez v. Emerg. Serv. Restoration, Inc. (In re Lopez)*, 367 B.R. 99, 103 (9th Cir. BAP 2007). When we review an issue under the de novo standard of review, "we consider [the] matter anew, as if no decision had been rendered previously." *Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 164 (9th Cir. BAP 2017).

If we determine that issue preclusion is available, we then review the bankruptcy court's decision to apply it for an abuse of discretion. *In re*

6

*Lopez*, 367 B.R. at 103. A bankruptcy court abuses its discretion if it applies the wrong legal standard or its findings of fact are illogical, implausible or without support in the record. *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011).

## DISCUSSION

Issue preclusion applies in nondischargeability proceedings. *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991). Because the relevant judgment was rendered under Colorado law, full faith and credit principles require us to apply Colorado issue preclusion law. *See* 28 U.S.C. § 1738; *Marrese v. Am. Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985).

Under Colorado law, issue preclusion is available if:

(1) the issue sought to be precluded is identical to an issue actually determined in the prior proceeding; (2) the party against whom estoppel is asserted has been a party to or is in privity with a party to the prior proceeding; (3) there is a final judgment on the merits in the prior proceeding; and (4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.

*Martin v. Hauck (In re Hauck)*, 466 B.R. 151, 163 (Bankr. D. Colo. 2012), *aff'd*, 489 B.R. 208 (D. Colo. 2013), *aff'd*, 541 F. App'x 898 (10th Cir. 2013) (quoting *Sunny Acres Villa, Inc. v. Cooper*, 25 P.3d 44, 47 (Colo. 2001) (en banc)).

Mr. Turchin does not dispute that elements (2) through (4) are met here. He argues, however, that the issues decided in the state court were not identical to those necessary to find the debt nondischargeable under

7

§§ 523(a)(2)(A) and (a)(6). We find no error or abuse of discretion in the court's conclusion that the state court judgment supported a finding of nondischargeability under subsection (a)(2)(A).

Section 523(a)(2)(A) excepts from a debtor's discharge debts resulting from "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." A creditor seeking to except a debt from discharge based on fraud must establish each of five elements: (1) misrepresentation, fraudulent omission or deceptive conduct; (2) knowledge of the falsity or deceptiveness of such representation(s) or omission(s); (3) an intent to deceive; (4) justifiable reliance by the creditor on the subject representation(s) or conduct; and (5) damage to the creditor proximately caused by its reliance on such representation(s) or conduct. *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (9th Cir. BAP 2009), *aff'd*, 407 Fed. Appx. 176 (9th Cir. 2010).

The state court found that: (1) Mr. Turchin promised to indemnify Mr. Berkowitz to the extent of Mr. Turchin's pro rata interest in Sage; (2) Mr. Turchin knew at the time he made the promise that he did not intend to pay the indemnification he promised; (3) he intended Mr. Berkowitz to rely on that promise; (4) Mr. Berkowitz reasonably relied on that promise; and (5) Mr. Berkowitz's reliance on that promise damaged him to the extent of the indemnification losses. Additionally, the state court's fraud judgment implicitly established that the state court found that the elements

8

of common law fraud under Colorado law were met. In other words, the court necessarily had to find that Mr. Berkowitz had established that: (I) Mr. Turchin made a false representation of a material fact; (ii) he knew the representation was false; (iii) Mr. Berkowitz did not know of the falsity; (iv) the representation was made with the intent that it be acted upon; and (v) the representation resulted in damages. *See Brody v. Bock*, 897 P.2d 769, 775–76 (Colo. 1995) (citation omitted).

Mr. Turchin argues that the state court did not make any findings amounting to a misrepresentation, fraudulent omission, or deceptive conduct. But under Colorado law, "[a] claim of fraud may be premised upon one party's promise concerning a future act coupled with a present intention not to fulfill the promise." *Id.* at 776 (citing *Kinsey v. Preeson*, 746 P.2d 542, 551 (Colo. 1987)) (internal quotations and alterations omitted). The state court's findings that Mr. Turchin promised to indemnify Mr. Berkowitz without the present intent to pay the indemnification amounts to a finding of a misrepresentation, fraudulent omission, or deceptive conduct sufficient to satisfy § 523(a)(2)(A). *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir. 1989).

Mr. Turchin also contends that the state court made no finding that he intended to deceive Mr. Berkowitz. But an intent to deceive is implicit in the state court's findings that Mr. Turchin made a promise he did not intend to fulfill and did so intending Mr. Berkowitz to rely on it. *See In re*

*Hauck*, 466 B.R. at 164-65 (bankruptcy court found that defendants' state court stipulation that they knowingly made false representations with the intent that the plaintiff would rely on those representations, that plaintiff justifiably relied on the representations and such reliance caused injuries and damages to plaintiff, satisfied the elements of § 523(a)(2)(A)).

Next, Mr. Turchin argues that the state court's findings were inadequate to support the § 523(a)(2)(A) claim because the state court did not provide any analysis of: (1) whether Mr. Turchin had the ability to pay the indemnification; (2) whether Mr. Turchin knew or should have known a default would occur; or (3) whether Mr. Berkowitz's decision to pledge additional collateral was made after a financial investigation. These arguments go to the question of Mr. Berkowitz's reliance.

Not only are these arguments essentially a collateral attack on the state court's fraud finding, analyses of the cited issues were not required for the bankruptcy court to conclude that the elements of § 523(a)(2)(A) were met. The state court found that Mr. Berkowitz "reasonably" relied on Mr. Turchin's promise, while the standard under § 523(a)(2)(A) is "justifiable" reliance. *Field v. Mans*, 516 U.S. 59, 73-75 (1995). Reasonable reliance is a more stringent, objective standard that **may**, in some circumstances, entail a duty to investigate if a prudent person would have done so. *See Heritage Pac. Fin., LLC v. Machuca (In re Machuca)*, 483 B.R. 726, 736-37 (9th Cir. BAP 2012). But a person may justifiably rely on a

representation even if its falsity could have been discovered upon investigation. *Japra v. Apte (In re Apte)*, 180 B.R. 223, 229 (9th Cir. BAP 1995). Typically, then, if reliance is found to be reasonable, it also meets the lesser, subjective standard of justifiable reliance. *Tallant v. Kaufman (In re Tallant)*, 218 B.R. 58, 69 n.15 (9th Cir. BAP 1998). Nothing in the record suggests that this is the atypical case.

Finally, Mr. Turchin observes (correctly) that the state court did not have jurisdiction to find nondischargeability. As such, he contends that the bankruptcy court should not have relied solely on the state court findings. But there is no question that the bankruptcy court may give issue preclusive effect to state court findings in subsequent nondischargeability proceedings. *Grogan*, 498 U.S. at 284 n.11; *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001); *Tomkow v. Barton (In re Tomkow)*, 563 B.R. 716, 722 (9th Cir. BAP 2017).

Because we conclude that the bankruptcy court did not err or abuse its discretion in applying issue preclusion to the state court's findings to establish nondischargeability under § 523(a)(2)(A), we need not address Mr. Turchin's argument that the declarations submitted in support of his opposition to the motion for summary judgment raised triable issues of fact.

## CONCLUSION

For these reasons, we AFFIRM the bankruptcy court's grant of

summary judgment on the § 523(a)(2)(A) cause of action. Accordingly, we need not address the § 523(a)(6) claim.